

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF OHIO

# EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **I N D I C T M E N T** |
|  | ) |  |
| Plaintiff, | ) | |
|  | ) | **4:13CR113** |
| v. | ) | CASE NO. _____ |
|  | ) | Title 33, United States Code, |
| BENEDICT W. LUPO, | ) | Section 1319(c)(2)(A), and |
| MICHAEL P. GUESMAN, and | ) | Title 18, United States Code, |
| HARDROCK EXCAVATING LLC, | ) | Section 2 |
|  | ) | **JUDGE NUGENT** |
| Defendants. | ) |  |

The Grand Jury charges:

## Background

1.     At all times material herein, the Mahoning River begins in Northeast Ohio

and eventually flows east where it joins the Shenango River in Pennsylvania.  In total, the

Mahoning River is approximately 113 miles long.

2

2.      Defendant BENEDICT W. LUPO is the owner of Defendant HARDROCK EXCAVATING LLC ("HARDROCK"), an Ohio company.  Defendant HARDROCK is a business that provides services to the oil and gas industry in Ohio and Pennsylvania.  One of Defendant HARDROCK's services is the storage, treatment, and disposal of waste liquids generated from oil and gas well drilling operations.  Some of the waste liquids accepted by Defendant HARDROCK for storage, treatment, and disposal included brine and oil-based drilling mud.  Brine is water with a high quantity of salt dissolved in it.  Oil-based drilling mud is a semi-solid slurry that contains petroleum products.

3.      Storage and processing of waste liquids occurs at Defendant HARDROCK's facility (the "facility") in Youngstown, Ohio.  As of January 31, 2013, there were 58 storage tanks located at the facility.  Each tank has an approximate capacity of 20,000 gallons.  The facility is within one mile of the Mahoning River.

### Summary of CWA Requirements

4.      The Federal Water Pollution Act, 33 U.S.C. § 1251, et seq., more commonly known as the Clean Water Act ("CWA"), was enacted by Congress to restore and maintain the chemical, physical, and biological quality of the nation's waters.  See 33 U.S.C. § 1251(a).

5.      The United States Environmental Protection Agency ("U.S. EPA") is an agency of the United States government responsible for carrying out federal laws and

3

regulations related to the protection of human health and the environment, including the CWA. See 33 U.S.C. § 1251(d).

6.      The CWA generally requires all discharges of pollutants from point sources to waters of the United States to be permitted. See 33 U.S.C. § 1311(a). Such permits are issued under the National Pollutant Discharge Elimination System ("NPDES"). See 33 U.S.C. § 1342. Except in compliance with such a permit, the discharge of any pollutant by any person is unlawful. See 33 U.S.C. § 1311(a).

7.      The term "pollutant" is broadly defined under the CWA to include "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." See 33 U.S.C. § 1362(6).

8.      A "point source" means "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." See 33 U.S.C. § 1362(14).

9.      "Waters of the United States" is defined to include intrastate lakes, rivers, and streams, including intermittent streams, the use, degradation, or destruction of which would or could affect interstate or foreign commerce. See 40 C.F.R. § 122.2.

4

## Unpermitted Discharges

10.     On or about November 1, 2012, Defendant BENEDICT W. LUPO directed Defendant MICHAEL P. GUESMAN, an employee of Defendant HARDROCK, to empty some of the waste liquid being stored at the facility into a nearby stormwater drain. Defendant BENEDICT W. LUPO further directed that Defendant MICHAEL P. GUESMAN conduct this activity only after no one else was at the facility and after dark.

11.     On or about November 1, 2012, Defendant MICHEAL P. GUESMAN emptied some of the waste liquid being stored at the facility into the nearby stormwater drain using a hose.

12.     Over the next several months, on numerous occasions, at the direction of Defendant BENEDICT W. LUPO, Defendant MICHAEL P. GUESMAN emptied some of the waste liquid being stored at the facility into the nearby stormwater drain using a hose.

13.     On or about January 31, 2013, was the last time Defendant MICHAEL P. GUESMAN emptied some of the waste liquid being stored at the facility into the nearby stormwater drain.  The waste liquid emptied that night included a mixture of brine and oil-based drilling mud.

14.     A sample of the discharge on the night of January 31, 2013, was obtained and analyzed.  Analysis of the sample, which was black in color, showed the presence of several hazardous pollutants, including benzene and toluene.

5

15.    The stormwater drain, into which the waste liquids had been discharged, flowed into an unnamed tributary of the Mahoning River.

16.    On February 1, 2013, oil was found in the unnamed tributary, all the way from the point where the stormwater drain entered the unnamed tributary down to the Mahoning River.  Oil and oil sheen were also visible on the Mahoning River.

## COUNT 1

17.    From on or about November 1, 2012, through on or about January 31, 2013, on numerous occasions in the Northern District of Ohio, Eastern Division, Defendants, BENEDICT W. LUPO, MICHAEL P. GUESMAN, and HARDROCK, knowingly discharged and caused the discharge of a pollutant from a point source into a water of the United States, without a NPDES permit, specifically, Defendant, BENEDICT W. LUPO, on behalf of Defendant, HARDROCK, and Defendant MICHAEL P. GUESMAN discharged and caused the discharge of waste liquids into a stormwater drain which flowed into an unnamed tributary of the Mahoning River and ultimately into the Mahoning River, all in violation of Title 18, United States Code, Section 2, and Title 33, United States Code, Section 1319(c)(2)(A).

A TRUE BILL.

Original document – Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.